IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JUSTIN HAITHCOCK AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KAREN D. HAITHCOCK,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL ACTION NO. 0:04-22981-DCN-BM<br><br>**REPORT AND RECOMMENDATION** |

Justin Haithcock, personal representative of the Estate of Karen D. Haithcock, filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein his late wife was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

For purposes of further discussion of this case, the term "Plaintiff" will refer to the decedent, Karen B. Haithcock. Plaintiff applied for Social Security Income (SSI) on March 12, 2001, alleging disability as of September 19, 1974 due to a heart condition. (R.pp. 12, 55). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on March 29, 2004. (R.pp. 18-40). The ALJ thereafter denied Plaintiff's claim in a decision issued May 27, 2004. (R.pp. 11-15). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the



determination of the ALJ the final decision of the Commissioner. (R.pp. 4-6). Justin Haithcock represents to the Court that Plaintiff had, in the interim, passed away on or about August 23, 2004. Defendant has not disputed this statement.

This action has been filed by Plaintiff's surviving spouse, as personal representative, seeking any benefits due to the Plaintiff from the Social Security Administration. Plaintiff asserts in her Complaint that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.



"[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

A review of the record shows that Plaintiff, who was thirty-nine (39) years old at the time of the ALJ's decision [and nine (9) years old when she alleges her disability began], had a ninth grade education with past relevant work experience as an electrical assembler. (R.pp. 21-22, 24-25, 55). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she had an impairment or combination of impairments which prevented her from engaging in all substantial gainful activity for which she was qualified by her age, education, experience and functional capacity, and which had lasted or could reasonably have been expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff did suffer from ischemic heart disease which the ALJ found to be a "severe" impairment, she nevertheless retained the residual functional capacity to perform at a light level of exertion, and since her past relevant work as an assembler did not require the performance of work related activities precluded by her residual functional capacity, she was not disabled. (R.pp. 14-15).

In her Complaint filed in this matter, Plaintiff alleges that the "factual findings of the Social Security Administration are not supported by substantial evidence and that the Social Security Administration has not properly applied the law to the facts." See Complaint, at ¶ 5. However, Plaintiff failed to file a brief in support of her claim, and in fact the file reflects that there has been no further contact from the Plaintiff or Plaintiff's counsel since the filing of this matter. The



3

Defendant has, however, filed a brief in support of the Commissioner's decision, and after review of the record and the arguments presented, the undersigned finds that there is substantial evidence to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

First, while the medical record certainly confirms that Plaintiff had heart problems (she underwent a surgical procedure for repair of an atrial septal defect when she was only nine years old, as well as an operation for repair of a ventricular septal defect and replacement of her mitral valve in 2001), none of Plaintiff's physicians ever opined that she was totally disabled. Indeed, the record reflects that it was apparently not until Plaintiff was around thirty-four (34) or thirty-five (35) years old that she first began complaining of shortness of breath and chest pain. (R.pp. 131, 133). An examination performed by Dr. Robert Luke on May 1, 2000 (including a stress cardiolite test) found that Plaintiff was in no acute distress and that her heart sounds were normal. Plaintiff's stress test indicated that she had fair exercise capacity with no indication of infarction or ischemia. Plaintiff had, however, been non-compliant with medications, and Dr. Luke restarted Plaintiff's medication regimen. See generally, (R.pp. 122-123, 130). Plaintiff reported no increase in symptoms or difficulties during a follow-up appointment with Dr. Luke on November 28, 2000, and he opined that Plaintiff was doing well overall, and that her symptoms appeared to be fleeting and not interruptive of her daily life. (R.pp. 120-121).

Plaintiff's medical records further reflect that she was seen by Dr. Themina Naz in February and May 2001. EKG's revealed sinus bradycardia, left hypertrophy, and left atrial enlargement. Dr. Naz recommended that Plaintiff increase her salt intake if she experienced



4

symptoms of dizziness, and her medication was also increased. (R.pp. 113-118). On June 18, 2001, Dr. Charles Jones completed a Physical Residual Functional Capacity Assessment of the Plaintiff in which he found that Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, sit about six hours in an eight hour work day, and stand about six hours in an eight hour work day. (R.p. 184).

Plaintiff underwent another evaluation on November 14, 2001 by Dr. Lew Rowe. An EKG revealed normal sinus rhythm, and an echocardiogram showed normal left ventricle function with an ejection fraction of 50%, severe mitral regurgitation, and probable small ventricular septal defect. Plaintiff demonstrated fair exercise tolerance with no chest pain during her stress test, with no significant EKG changes and so sign of ischemia. (R.pp. 235-237, 239, 243). Another echocardiogram on December 6, 2001 demonstrated a deformed mitral valve with severe mitral regurgitation; (R.p. 232); and Plaintiff underwent surgery for ventricular septal defect repair and mitral valve replacement five (5) days later. (R.pp. 131-138). Plaintiff did well postoperatively, and by January 22, 2002 an echocardiogram demonstrated normal left ventricle function and an intact prosthetic mitral valve, also with appropriate function. (R.pp. 131-138, 158-162, 225). During a follow-up appointment with Dr. Rowe on May 6, 2002, he noted that Plaintiff's heart rate looked good, and that there was no sign of congestive heart failure. Dr. Rowe also recommended that Plaintiff exercise regularly. (R.pp. 220-222).

Plaintiff underwent a consultative examination on July 18, 2002, performed by Dr. Clifford Medina. Dr. Medina noted that Plaintiff had had significant improvement in her symptoms postoperatively, and a cardiovascular examination revealed a regular heart rate and rhythm with no murmurs, rubs or gallops. An EKG was also performed, which demonstrated normal sinus rhythm



5

and no evidence of arrhythmia. (R.pp. 169-170).

A second Physical Residual Functional Capacity Assessment was completed by a state agency medical consultant (signature illegible) on August 7, 2002, in which the medical consultant determined that Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand for about six (6) hours in an eight hour work day, and sit for about six (6) hours in an eight hour work day. (R.pp. 174-181).

At a follow-up appointment with Dr. Rowe on August 20, 2002, examination revealed normal heart rate and rhythm, and an EKG demonstrated normal sinus rhythm. Dr. Rowe diagnosed Plaintiff with symptomatic paroxysmal supra ventricular tachycardia, and prescribed medication. (R.pp. 210-211). There is no record of Plaintiff seeking or receiving any on-going treatment for her condition after her visit to Dr. Rowe on August 20, 2002.

In addition to this objective medical evidence, the ALJ noted Plaintiff's subjective testimony, but only found that her testimony was credible to preclude performance of medium work.[1] Plaintiff testified that she had a driver's license and drove an automobile, that she watched television, and that with rest she was able to cook meals, make beds, wash clothes and sweep the floor, as well as go to the grocery store two or three times a week. (R.pp. 23, 33-36). Based on this record, the ALJ found that Plaintiff was capable of performing work at the light exertional level[2], although she should avoid concentrated exposure to temperature extremes. (R.pp. 13-14). The undersigned can find no

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



6

reversible error in this decision. While the record before the Court does confirm that Plaintiff suffered from a serious heart condition, this diagnosis did not automatically entitle Plaintiff to disability benefits. Rather, the question is whether this ailment was of a disabling severity such as to entitle her to Social Security benefits. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. Here, the record contains substantial evidence to support the ALJ's findings and conclusions. See generally, Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

      Finally, at the administrative hearing, the ALJ asked the vocational expert to assess Plaintiff's work history in terms of the level of skill involved and the level of exertion involved, and the VE testified that Plaintiff's past work as an electrical assembler was light and unskilled. (R.pp. 38-39). The VE further testified that there were also a significant number of sedentary assembler jobs



7

in the state and national economy. (R.p. 39). Based on this testimony, the ALJ determined that Plaintiff could perform her past relevant work as an assembler as she performed it and as that job is generally performed in the national economy. (R.p. 14). Again, substantial evidence supports this finding.

## Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 29, 2005